## Adams v. Commonwealth.

(Decided March 21, 1913.)

### Appeal from Fayette Circuit Court.

Criminal Law—Grand Larceny—What Constitutes.—The crime of grand larceny is committed when the defendant runs his hand into the pocket of another and takes money in the pocket amounting to over $20, although his hand is seized before the money is entirely removed from the pocket.

MAURY KEMPER for appellant.

JAMES GARNETT, Attorney General and D. O. MYATT, Assistant Attorney General for appellee.

Opinion of the Court by Judge Miller—Affirming.

Appellant, Albert Adams, *alias* George Roberts, *alias* W. E. Spencer, and William Clark, *alias* W. R. Coyne, *alias* Frank Coleman, were jointly indicted in the Fayette Circuit Court for having robbed Llewellyn Sharp, Jr., of $260.00 in United States currency. Upon a trial Adams was found guilty of grand larceny and sentenced to serve an indeterminate term of from one to five years in the penitentiary. He appeals; and as a single ground for a reversal he insists that the trial judge erred in giving any instructions whatever upon the subject of robbery or grand larceny because, as he contends, the only crime sustained by the proof upon which any instructions should have been given, was the common law offense of attempting to commit a felony. The facts upon which the contention was based are as follows:

Sharp and his tenant, Gormley, had sold their tobacco, receiving in payment a check for $473.00. They went into the Lexington City National Bank, cashed the check and divided the money between them, Gormley, furthermore, paying Sharp $30.00 which he owed him. Altogether Sharp had about $270.00, composed mostly of ten and twenty dollar bills, which he rolled together and placed in the left pocket of his pants. The entrance to the bank contained two doors, an outside door at the street and an inside door at the top of several steps on the inside of the bank. Adams and Clark were standing in the bank. As Sharp and Gormley were leaving the bank and at about the time they passed through the inside door and were descending towards the street door, Clark pushed Adams against Sharp. Sharp, evidently thinking it was only the usual interference attending the efforts of several people to pass through a door at the same time, attempted to push his way between Clark and Adams in order to reach the outside door; but as he did so, Gormley, who was behind Sharp, said to him: "They are trying to get your money." Sharp quickly ran his hand into his left pocket and caught Clark's hand as he was withdrawing it, with the money between his fingers and near the top of the pocket. Gormley says Adams' hand was about half way out of Sharp's Pocket and that he saw the money. Sharp's account of the affair appears from his examination as follows:

Q. "Which hand did he go into your pocket with?"
A. "I don't know which hand he had in my pocket."
Q. "What was the first thing which attracted your attention to Adams after he got up against you?" A. "I was trying to get through between both of them, and Mr. Gormley said to me that they were trying to get my money; and I had. it in my pocket, and I run my hand down that way to feel and grabbed hold of him and twisted it out of his hand, and he started to run then." Q. "What was it Gormley said to you?" A. "Said he had his hand in my pocket trying to get my money, and I run my hand down and grabbed hold of him." Q. "Show the jury there just how far Adams had his hand in your pocket?" A. "Say this is a roll of money, and I run my hand down that way and grabbed it just about that way is the way he had it when I grabbed hold of it." Q. "If I understand you, Adams' hand was just about like that when you grabbed him?" A. "Just about that way, he just barely had hold of the money, in fact, just about that shape." Q. "Like this?" A. "No, he didn't have hold of it with his hands that way, he just had it in about that shape." (Indicating the money in the fingers at the end of the fingers holding the money at one end.) Q. "If I understand you he had the money drawn out of the pocket?" A. "Yes, sir, and I run my hand down." Q. "And he had the money in his fingers like this?" A. "Yes, sir." Q. "Had he gotten his hand entirely out of your pocket?" A. "Yes, sir." Q. "Had the money gotten entirely out of your pocket?" A. "Just barely—the bills just barely touched the outside of my pocket." Q. "And then you grabbed his hand with which one of yours?" A. "This one right here (indicating left hand)."

Sharp and Gormley were the only witnesses upon this point. The appellant confined his evidence to an attempt to show that Sharp's testimony upon the examining trial was contrary to his testimony upon the trial in the circuit court. Neither Adams nor Clark testified.

Larceny is the taking and carrying away of the mere personal goods of another with intent to steal them. The first requisite of larceny is taking possession of the goods by the thief; and a taking and carrying away of the goods is an essential element of the crime. Appellant insists that the asportation has not been shown in this case.

To constitute asportation, there must be a taking or

severance of the goods from the possession of the owner. 2 Russell on Crimes, 152. But possession, so far as this offense is concerned, is the having or holding or detention of property in one's power or command. It is not necessary, however, that the goods be retained in the possession of the thief, or removed from the owner's premises; and while there must be some removal of the property from the place it occupied, yet the slightest removal of the entire article will suffice. A taking and carrying away, in the sense of the law, consists in removing the goods from the place where they were before, though they be not quite carried away; as if they be taken from one room into another in the owner's house, removed from a trunk to the floor, or from the head to the tail of a wagon. 3 Greenleaf's Evi., 154. It is sufficient if the thief have absolute control of the property even for an instant. 1 Roberson's Crim. Law. Sec. 413.

The fourth and fifth instructions to the jury read as follows:

"4. If the defendant got possession of the money on defendant's person, and with the felonious intention of converting it to his own use, and of depriving the said Sharp of the use thereof and against the will and without the consent of said Sharp, removed it from the pocket of said Sharp, or from its resting place in the pocket of said Sharp, this was a taking and carrying away within the meaning of the law, and was sufficient to constitute the offense of larceny.

"5. If the defendant attempted to rob the said Sharp or attempted to steal from him money of the value of more than twenty dollars, with the fraudulent intent to commit a felony by taking and carrying away said property against the defendant's will and without his consent, this was an attempt to commit a felony, and the jury may punish the defendant by any fine or imprisonment in the county jail, or both, in their discretion, and the defendant, if committed to jail, may be put at labor in the discretion of the jury."

Appellant insists that the fourth instruction, it being the one under which he was convicted, should not have been given, and that the fifth instruction covered the law of the case. The question for the jury was, did the facts shown in this case constitute a taking and carrying away of Sharp's money within the meaning of the law of larceny? Under the law as above laid down, we think there

can be no question that the facts did constitute an asportation within the meaning of the law.

In Harrison v. The People, 50 N. Y., 518; 10 Am. Rep., 517, it appears that Bull entered a street car in New York City having in his possession about $25,000.00 in money and securities, in a pocketbook in his breast coat pocket. As he was entering the door of the car he was met by Harrison, who put his hand into Bull's pocket, seized the pocketbook, and had lifted it about three inches from the bottom of the pocket, when Bull seized the pocketbook and thrust it back into his pocket. Upon the trial, Harrison's counsel contended, as Adams' counsel are contending here, that there could be a conviction only for an attempt to commit larceny. In upholding the conviction of Harrison, for larceny, Judge Folger quoted with approval the following language upon the subject of asportation, taken from Walsh's Case, 1 Moody Crown Cas., 14:

"If every part of the thing is removed from the space which that part occupies, though the whole thing is not removed from the whole space which the whole thing occupied, the asportation will be sufficient; so drawing a sword partly out of its scabbard will constitute a complete *asportavit*."

And continuing, Judge Folger further said:

"Here, by the testimony, the pocket-book was lifted a space of three inches from the bottom of the pocket, and every part of it was removed from the space which that part occupied before the plaintiff in error touched it. * * * The hand of the plaintiff in error was about the book, controlling it and taking it away; indeed had taken it away (as in Walsh's Case, *supra*), every part of it from the place which that part had occupied before his touch. It was in his possession. He directed, and, for the instant of time, controlled its movements. No inanimate, physical thing hindered him. Bull, for that instant of time did not control or possess it; but, feeling him raising the book, threw up his own hand, pressed the book, caught it as it was going, and regained control and possession of it. But for this it would have been taken entirely away. Who, then, for that instant, controlled it and had it in possession?"

The fourth instruction properly applied the law under the facts of the case.

The case of the Commonwealth in the case at bar is stronger than the People's case against Harrison.

*supra,* since here Adams lifted Sharp's money from the bottom to the top of his pocket before Sharp recovered it.

Appellant's conviction of larceny instead of robbery was proper. Robbery is committed by force; larceny by stealth; and where there is no violence or terror resorted to for the purpose of inducing the owner to part with his property to save his person, the crime committed is larceny and not robbery. The difference is well illustrated in Alexander v. Commonwealth, 14 Ky. L. R., 290, where Alexander and Glazier, a peddler of clothes, engaged in an altercation during which Alexander took hold of Glazier's coat and in the latter's attempt to flee he stripped his coat, leaving it with Alexander. Alexander afterwards returned the coat to Glazier, but appropriated to his own use $60.00 which he found in the coat and which he knew was in the coat when he took it. This court held that Alexander was properly convicted of larceny instead of robbery, there having been no force or violence resorted to for the purpose of inducing Glazier to part with his money.

Finding no error in the record, the judgment is affirmed.