[Crim. No. 1994. In Bank.—September 8, 1916.]

## THE PEOPLE, Appellant, v. LEONARD C. CANFIELD, Respondent.

CRIMINAL LAW—FORGERY—EVIDENCE OF OTHER OFFENSE—ERROR PRE-
VENTING A FAIR TRIAL.—In a prosecution for forging a certain
mortgage, it was error tending to prevent the defendant from hav-
ing a fair trial, within the meaning of section 4½ of article VI of
the constitution, to admit in evidence a statement of the defendant,
not amounting to a confession of the offense charged, to the effect
that he had participated in another transaction with the person
named as mortgagee in the forged mortgage, whereby the latter
had procured a sum of money upon a purported sale of realty con-
summated by means of a forged instrument.

ID.—EFFECT OF ERROR FOR DETERMINATION OF TRIAL COURT—ORDER
GRANTING NEW TRIAL—APPEAL.—It was for the trial court to de-
termine the effect of such evidence upon the jury, and whether
or not the defendant in view of all the facts had been given a
fair trial, and its order granting a new trial will not be inter-
fered with on appeal.

ID.—DISCRETION OF TRIAL COURT IN MATTERS OF NEW TRIAL.—Section
4½ of article VI of the constitution, providing that no new trial
shall be granted in criminal cases on the ground that improper
evidence had been admitted, "unless, after an examination of the
entire cause, including the evidence, the court shall be of the
opinion that the error complained of has resulted in a miscarriage
of justice," was not designed to take from the trial court and
transfer to the appellate courts, the discretion vested in the trial
court in matters of new trial.

APPEAL from an order of the Superior Court of Los
Angeles County granting a new trial. Gavin W. Craig,
Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Robert M. Clarke, Deputy
Attorney-General, and Tracy Chatfield Becker, Deputy Dis-
trict Attorney, for Appellant.

Paul W. Schenck, for Respondent.

MELVIN, J.—Defendant after conviction upon a charge of
forgery, moved for a new trial. His motion was granted and
from the order made in that behalf, the people appeal.

Canfield was charged with forging a certain mortgage purporting to have been executed by Justin E. Cook, the owner of the real property described in said mortgage to secure the payment of a promissory note for ten thousand dollars payable by Cook to one Helmer E. Rabild who was the mortgagee named in the instrument. The defendant was also charged in a separate count with the forgery of the name of the notary public appearing upon the purported acknowledgment to the mortgage.

The evidence on the part of the prosecution tended to show that defendant, representing himself as Helmer E. Rabild, sold the note and mortgage to Caroline and Flora B. Schertz; that he was paid by check which he deposited in a bank, drawing from time to time against the account thus established by means of checks signed "H. E. Rabild." At all times after his arrest the defendant denied that he was Rabild or that he had forged or negotiated the mortgage and note. The evidence showed that he did admit that he knew Rabild who, he said, lived in Monrovia, but to whom he was unable to lead an officer whom he promised to guide to Rabild's home. During this futile trip he was asked by a Mr. Adams if he had executed a certain other mortgage and had acknowledged it before a notary public named Baly. He replied that he had done so, and was then informed that Baly had been in Honolulu at the date of the alleged acknowledgment. At this juncture the officer in charge of the defendant took him aside and said: "Mr. Canfield, you have heard what Mr. Adams asked you. . . . What is the use of keeping us out all day, staying here? It is late now and we want to all get back"; and said: "Why don't you tell us the truth about it?" He (defendant) said: "All right, I will tell you the truth about it; take me right back into town." It was also in evidence that Canfield told Adams that there was a man named Rabild; that he and Rabild had worked deals together; and that they had participated in a transaction whereby Rabild had procured four thousand dollars upon a purported sale of realty consummated by means of a forged instrument. It is to be noted, however, that at no time did defendant confess that he forged or negotiated the mortgage set out in the indictment in this case. He denied the allegations contained in said indictment.

In his own behalf defendant introduced evidence by which he sought to establish an alibi. He could not account for every hour of his time—few men can—but the workmen engaged upon a house which defendant was constructing in Los Angeles testified that they were employed on the building nearly all of the time during July, August, and September, and that defendant was there nearly all of the time every day.

It is contended on behalf of the prosecution that the defendant's statement that he had been engaged in the commission of another crime with Rabild was not a confession of guilt of this offense for which he was on trial; that even if it be regarded as such confession it was given without coercion; that the proof of alleged alibi was so vague as to be of no value; and that the guilt of Canfield was so conclusively established as to render the court's action in granting a new trial an abuse of discretion. It is asserted, therefore, that under section 4½ of article VI of the constitution it is our duty to set aside the order granting a new trial.

Canfield's statement regarding another crime was not a confession of the offense charged in the indictment before us, but the introduction of testimony regarding a distinct felony was serious error which must have tended to prevent him from having a fair trial. (*People* v. *Stewart*, 85 Cal. 174, [24 Pac. 722]; *People* v. *Arlington*, 123 Cal. 356, [55 Pac. 1003]; *People* v. *Elliott*, 119 Cal. 593, [51 Pac. 955].) There was some evidence that the statement connecting defendant with the evanished Rabild was obtained by promise of immunity, although the greater part of it would indicate that the district attorney and his associates endeavored most carefully to inform the accused regarding his rights. But one witness called by the prosecution testified that after the defendant's arrest, and in a conversation which occurred before the admission by him that he had committed another offense, the district attorney said to Canfield "that there was no need of denying the matter, that he was satisfied that he was guilty, and that it would be better for him if he would tell the truth—something to that effect."

It was for the judge of the trial court to say what had been the effect of the evidence upon the jury, and whether or not the defendant in view of all of the facts had been given a fair trial. If the motion for a new trial had been denied, the

prosecution might then well have invoked in favor of the conviction the section of the constitution which provides that no new trial shall be granted in any criminal case on the ground that improper evidence has been admitted, "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Const., art. VI, sec. 4½.) But this section of the constitution was not designed to take from the trial court and transfer to the appellate courts the high discretion vested in that tribunal. The judge who presided at the trial of the cause, who heard the testimony, who observed the jurors and had an opportunity also of testing the truth of the defendant's statements by noticing his demeanor, was in a peculiarly favorable position for determining justly the question whether or not the defendant had been accorded a fair trial. We cannot follow the mental processes of the judge. He may have been profoundly impressed with the influence upon the jury, to Canfield's injury, of the introduction of the evidence tending to prove another offense. Or he may have doubted the identification by the witnesses for the prosecution of Canfield as the man who passed as Rabild in the transactions leading to the sale of the note and mortgage. We can hardly manufacture in fancy a hypothetical situation in which a reviewing court would be justified in questioning the discretion of a trial court who should grant a new trial in a case involving a criminal charge. Surely there is no basis in the case before us for the substitution of the discretion of this court for that of the superior court. We must assume that the learned judge of the trial court acted with a full appreciation of his duties and obligations, with the cited section of the constitution in mind, and that the conclusion which he reached was not governed by any idle nor any mere technical reasons.

The order granting a new trial is affirmed.

Henshaw, J., Lorigan, J., Shaw, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.