[Crim. No. 391.  Third Appellate District.—October 27, 1917.]

## THE PEOPLE, Appellant, v. JOHN CAVALA, Respondent.

CRIMINAL LAW—WITNESSES—IMMUNITY.—Exemption from prosecution given by section 1324 of the Penal Code (prior to its repeal by Stats. 1917, p. 291) to a witness who has been required to testify against another offender does not extend to one whose testimony did not criminate or tend to criminate him, and who at the time he testified was neither formally charged nor suspected by the district attorney of complicity in the offense.

APPEAL from an order of the Superior Court of Merced County granting a new trial.  George H. Cabaniss, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Appellant.

H. A. Gabriel, J. J. Griffin, and H. S. Shaffer, for Respondent.

HART, J.—Under an information filed in the superior court of Merced County, by the district attorney of said county, the defendant was convicted of the crime of grand larceny, in that he did, on the twenty-ninth day of April, 1915, feloniously steal, take, and drive away a certain cow, the personal property of J. B. Coito & Co., a firm engaged in the business of dairying in said county.

The court below, upon the application of the defendant, ordered a new trial, stating the ground therefor as follows: "The motion for a new trial made herein is granted on the ground that the court committed an error in refusing to grant defendant's motion that the action be dismissed, and that a verdict of 'not guilty' be *pro forma* rendered in the case, by reason of his immunity from prosecution for the offense charged in this information, because of testimony given by him as a witness upon the preliminary examination of that same matter or charge, wherein the people were prosecuting one George A. Avila."

The people appeal from said order.

Obviously, the only question presented here is whether the defendant was entitled to immunity from prosecution for the charge preferred against him by the information under the terms of section 1324 of the Penal Code.

One George M. Avila had previously been prosecuted in the superior court for the identical offense charged against the defendant here, and the latter testified in that case. In this case the defendant did not take the stand, but his testimony, given in the Avila case, was introduced by the district attorney in the present case. In the Avila case, the defendant practically admitted that he stole the cow referred to in the information.

It appears that Avila was engaged in the business of a butcher and that he did his own slaughtering. On his ranch, where he conducted his business, the defendant, at the time of the commission of the larceny here charged, had about thirty head of milch cows, which he had left there a day or two before the larceny. Avila was to take care of said cows for the defendant and sell the same whenever the opportunity to do so presented itself.

Avila maintained a slaughter-house for the purposes of his business, but occasionally slaughtered cattle in his barn on the ranch.

On the twenty-ninth day of April, 1915, at about half-past 8 in the evening, and a couple of hours after he had had supper at the Avila home with the family, the defendant, having previously left the Avila place in his automobile, returned to said place and brought with him the cow referred to in the information. According to his own testimony given in the Avila case, the defendant, as he was driving along the road on his return to the Avila ranch and when near the latter's house, observed a cow in the road and at the same time saw a man jump over the fence skirting the road and start to run. The defendant yelled at the man, but the latter made no response, and kept on running. He thereupon drove to Avila's house, there left his machine, and returned to get the cow, he then supposing, so he declared, that it was one of his cows. He drove the cow to Avila's place and, on turning a light on her, discovered that the animal did not belong to him. He then blew the horn on his auto and Avila thereupon came out of his house and went to where the defendant was standing. The latter then requested Avila to kill the

cow and ship the carcass to O'Connor Brothers, at San Jose.
The defendant thereupon left the premises; and, in accordance with the instruction given him by the defendant, Avila
that night slaughtered the cow and dressed the carcass in his
barn, but in the place of shipping the beef as directed by the
defendant, cut it into meat and sent it out the next morning
in a wagon, used by him for that purpose, to be peddled or
sold to the people living in the country thereabouts, explaining that he had forgotten the address to which the defendant directed him to ship the beef, and that he would himself
pay the defendant for it. The defendant, in his testimony
at the trial of Avila, explained that the reason that he
instructed Avila to slaughter the cow after discovering that
the animal was not his property was because he "figured that
the other man was going to get away with her, and I said if
the owner shows up, I am willing to pay for her—I am willing to pay for the cow."

The owners of the cow, having missed her from their ranch
the next morning after the above-narrated incidents occurred,
notified a constable of the fact, and that officer, with one of
the owners of the cow, thereupon started to search for her.
On the afternoon of that day they went to Avila's ranch and
in his barn they found what they identified as the hide of the
cow in a roll on the floor or ground.

Avila was questioned about the cow, gave equivocating and
unsatisfactory answers, and was thereupon placed under
arrest. Later he was formally charged before a magistrate
with the larceny of the cow and thereafter given a preliminary hearing and held for trial in the superior court.

The defendant, as seen, was called by the district attorney
to testify for the people at the preliminary examination of
Avila.

At the trial of the defendant, after the people had presented and rested their original case, counsel for the defendant thereupon introduced in evidence the defendant's testimony given at the preliminary examination of the charge
against Avila, and upon said testimony and the admission of
the district attorney that section 1324 of the Penal Code was
not at any time read to the defendant at said examination by
the justice before whom the proceeding was held, presented
a motion that the court instruct the jury to acquit Cavala on
the ground that, under the showing thus made, the defend-

ant "is immune from prosecution under the provisions" of said section. The court disallowed the motion but, as seen, granted the defendant's motion for a new trial on that ground.

The section of the Penal Code referred to in substance provides that a person offending against any of the penal laws of this state is a competent witness against any other person so offending, and may be compelled to testify against such other person, and that if such person demands to be excused from so testifying on the ground that such testimony may incriminate himself, he shall not be excused, but in that case the testimony so given by him shall not thereafter be used against him in any criminal prosecution against him (except for perjury in giving such testimony), nor shall he be liable for prosecution or punishment for the offense with reference to which such testimony was given, etc., that a person giving such testimony shall not be exempt from prosecution or punishment for the offense with reference to which he may have thus testified if he so testifies voluntarily, or where he fails to ask to be excused as above indicated; that the person so testifying shall be deemed to have asked to be excused from testifying, unless, before any testimony is given, etc., the judge, foreman, or other person presiding at such trial, etc., shall distinctly "read this section of this code to such witness," etc.

It is nowhere made to appear in the record as it is presented before us that Cavala, either before or at the time of the preliminary examination of Avila for the offense charged in the information against him, was formally charged with or otherwise accused of the crime set out in said information, or that the district attorney or any of the other officers connected with the prosecution of Avila then or at any time, until after the trial of Avila in the superior court upon said charge, supposed or even suspected, or had any reason to suppose or suspect, other than that growing out of the mere circumstance of the presence of Cavala at the Avila ranch when the hide of the animal was found at said ranch, that the defendant was in any manner or degree connected with or implicated in the commission of said crime. On the contrary, in his opening statement to the jury, which is incorporated into and made a part of the record here, the district attorney declared that the defendant was not under arrest at the time

he testified at the examination of Avila before the magistrate. Moreover, there was nothing in the testimony of the defendant given before the committing magistrate at the hearing of the charge against Avila which incriminated the defendant or which tended to show that he was connected in any way with the commission of the crime. He was asked at the examination about his presence at the ranch of Avila at the time the latter was arrested; whether he had cattle of his own on said ranch and, if so, when he took them there; whether he sold the stolen cow to Avila. He admitted having been at the Avila home at the time the hide of the stolen cow was discovered by the owner and the constable, and that he was there the previous day and evening; that he had the day before driven a number of head of his own milch cows to said ranch and left them in charge of Avila; that he did not sell the stolen cow to Avila, and knew nothing about the killing of the animal until Avila had told him of it. It appears that the stolen cow, when killed, was with calf and that, upon slaughtering her, the calf was taken from her and its carcass, with the hide unremoved therefrom, left in the barn. Cavala was asked at the hearing if he knew that a calf had been taken from the cow and he replied that he knew it only from Avila himself—that he never saw the calf until the next day after the constable was at the Avila ranch looking for the cow. He stated that he sold one of his own cows to one Enos.

Thus we have given the sum and substance of Cavala's testimony before the magistrate at the examination of Avila, and, as before stated, there is nothing in it incriminatory of the defendant or indicating that the district attorney suspected him of being implicated in the crime or was using him as a witness against Avila upon the assumption that he was the latter's confederate in the crime. In brief and in fact, so far as the record shows to the contrary, the defendant's connection with the crime as a party thereto was not developed or discovered until after he had voluntarily or of his own volition testified as a witness for Avila in the latter's trial before the superior court, when, as we have seen, he admitted under oath that he stole the cow and turned the animal over to Avila to be slaughtered.

It has been held that, to justify the application of section 1324 of the Penal Code where a witness who has given testi-

mony in a criminal case or proceeding claims, under said section, immunity from prosecution for the offense concerning which he has given such testimony, it must be made to appear that the testimony so given has incriminated or tended to incriminate him. (*People* v. *Richman,* 28 Cal. App. 761, 764, [155 Pac. 142].) That case went to the supreme court on petition for a hearing in said court and the petition was denied. We may therefore accept as settled the rule as thus stated, and, applying it to this case, the defendant, not having incriminated himself in the testimony given by him before the magistrate in the Avila case, is without a legal foundation upon which to base his claim to exemption from prosecution and punishment for the crime charged against him in the information. But, if we were to assume that his testimony before the magistrate in that case tended to or did in fact incriminate him or tended to or did in fact show that he was implicated in the commission of the crime charged against Avila before the magistrate and later against himself, the fact that at the time he gave such testimony he was not formally or otherwise charged with the crime or any offense growing out of said crime, and the further fact that the record does not show that he was then even suspected by the officers of the law of having been in any way connected with the commission of said or any crime, still remain; and while, of course, we do not hold that, to have entitled a witness to invoke the benefit of section 1324 when called and required to testify against a confederate in crime, he must have first been *formally* charged with the offense with reference to which his testimony was so given, yet the fact that the defendant in this case was not so charged at the time he testified at the Avila hearing lends persuasive force to the conclusion to be drawn from the absence in the record of an affirmative showing to the contrary that he was not, at that time, supposed or believed by the officers to have been implicated in the commission of the offense to which his testimony at the hearing related, or not used by the district attorney as a witness at said hearing upon the theory or assumption that he was a confederate of Avila in the perpetration of the crime charged and under hearing against the latter. For aught that appears in the record to the contrary, the district attorney, the constable who arrested Avila, and the magistrate who examined the charge

against the latter, supposed and assumed, when the defendant was called and sworn and testified as a witness at the said preliminary hearing, that the defendant had nothing to do with the stealing of the cow. Indeed, from the character of the examination to which the defendant was subjected by the district attorney before the magistrate as well as the character of the testimony there given by him, the natural inference is that the district attorney and other officers did not at that time suppose or for a moment entertain even a suspicion that he committed or assisted in committing the crime charged against Avila. And, in the absence of an affirmative showing that the district attorney did believe from his investigations that the defendant was connected with the commission of the crime or that he was in possession of evidence pointing to the defendant's guilty connection with the crime and intended later to charge him therewith and prosecute him therefor or for some other offense growing out of the offense to which his testimony before the magistrate related, we may assume that the district attorney then had no testimony against the defendant, and, when requiring him to testify at the hearing, had no intention or thought of prosecuting him for the crime under examination or any other offense arising out of said crime. The situation then stands thus: That the district attorney called a witness to the stand and required him to give testimony as to some fact or circumstance which he conceived might tend to establish probable or reasonable cause for believing that Avila committed the offense for which he was being preliminarily examined, and that, unexpectedly to that officer, it transpired or was discovered, after the witness had so testified, that he had himself committed or aided in the commission of said crime; that section 1324 was not read to the witness as required, for the very good reason that his connection with the crime with reference to which he so testified was, when he gave his testimony, unknown to the district attorney and the magistrate who heard the case. Now, may it justly be declared that it was fairly and reasonably within the intent or contemplation of section 1324, that in such a case the witness might legally have claimed (section 1324 was repealed by the legislature of 1917 and since the trial of this case) and have been entitled to immunity from prosecution and punishment for his offense under the terms

of said section? We think not. So to hold would compel a construction of said section which would, to protect the rights of the people in criminal cases, have required that said section be read to every witness called by the people to give testimony in support of the prosecution in every criminal case, since it is not at all unlikely that some witness so called and testifying, unbeknown to the district attorney, the judge, or justice or officer presiding in the proceeding in which such testimony was given, might have been a party to the very crime to which his testimony might have related or subject to prosecution and punishment for some other offense growing out of said crime and upon which such testimony might have some material bearing. It seems to us that the section cannot be so construed without reducing it to a manifest absurdity.

"The purpose of the act," said the supreme court, in the very late case of *People* v. *Fryer,* 175 Cal. 785, [167 Pac. 382], referring to said section, "is to compel a confederate in the commission of crime to testify against his codefendant, which could not be done under the law as it stood prior to the enactment of this section," and said section, proceeds the opinion, "is based on the assumption of the guilt of the person compelled to testify."

As is clearly true upon the record as we see it here, or upon the assumption justified by that record, the defendant was not introduced as a witness by the people at the Avila hearing upon the theory that he was the confederate of Avila or that he had anything to do with the commission of the crime with reference to which he so testified. It did not then appear, in other words, that he was of the class of witnesses referred to by said section who were entitled to invoke the protection afforded to confederates in crime called by the people to give testimony against their co-confederate. He was not then a codefendant with Avila because, as we have shown, he had not at that time been jointly with the latter or otherwise formally charged with the commission of the offense. He was, in short, as any other ordinary witness might be, called to the witness-stand by the district attorney and testified as a witness for the people, without any knowledge or belief on the part of the prosecuting officer and the magistrate that he was in any manner or degree implicated in the commission of the crime.

The cases of *People* v. *Knowles,* 27 Cal. App. 498, [155 Pac. 137], and *People* v. *Fryer,* 175 Cal. 785, [167 Pac. 382], are altogether different from the present case. In those cases, it will be noted, the witnesses, before being called by the people to testify concerning the offense under examination, were either formally charged with or were amenable to a grand jury indictment for the offense with reference to which they were asked and required to give testimony for the people, and the records of those cases, as they were presented for review by the appellate court, clearly so disclosed. Such is not the case here, as has been shown.

We think the learned trial judge, upon the record as it is presented to this court, fell into error in granting the defendant a new trial on the ground stated, and therefore the order granting the same is reversed, with directions to the court below to proceed with the rendition of judgment upon the verdict as returned. (*People* v. *Tomsky,* 20 Cal. App. 672, 686, [130 Pac. 184].)

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 24, 1917.