[Crim. No. 1465.   First Appellate District, Division Two.—May 31, 1928.]

THE PEOPLE, Appellant, v. BERT PALMER, Respondent.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Appellant.

Frank J. Egan, Public Defender, and Charles R. Boden, Assistant Public Defender, for Respondent.

NOURSE, J.—The defendant and Robert Arter were jointly charged with the crime of grand theft. They were tried before a jury and a verdict against both defendants was returned, but the trial court, on motion, granted this defendant a new trial. From this order the state has appealed on a typewritten transcript.

We take the facts of the case substantially as stated in appellant's brief, as they are not controverted by respondent. These facts stand in the record undisputed inasmuch as neither the defendant nor his associate took the stand at the trial and no evidence was offered on behalf of either of them except an ineffectual attempt to prove an alibi in behalf of Arter. This evidence shows that Arter approached the complaining witness on the deck of the steamer on which the latter had just arrived in San Francisco and engaged him in conversation about the weather and the trip on the boat, giving to the complaining witness the impression that he also had arrived on the same steamer. Arter then suggested that he was not acquainted with San Francisco and would like to see some of the places of interest, particularly Chinatown. As the conversation proceeded it was agreed that the two parties would go ashore and that the complaining witness would direct Arter to places of interest in and about that portion of San Francisco. These two accordingly walked from the dock up California Street until they had passed Kearny Street, where respondent Palmer approached them and inquired as to the location of a certain hotel, the name of which was unknown to both of them. Palmer then related an experience of the night before with a girl whom he claimed had taken twenty dollars from him and had given this hotel as her address. Arter then suggested to Palmer that he should match the girl for the twenty dollars and Palmer immediately expressed complete ignorance of the meaning of the expression ''match,'' and

thereupon pulled out a large roll of greenbacks which he showed to Arter and the complaining witness. The latter advised him to put the money in a bank as it was unsafe to carry it on his person, but Palmer replied that he had ten thousand more on his belt. He then stated that both Arter and the complaining witness seemed to be such good fellows that he would like to show his appreciation of their company and buy them a drink or a cigar. The complaining witness stated that he did not drink, and the conversation then returned to the mysteries of the game of matching and Palmer again asked Arter to explain how it was played. Arter then took two coins from his pocket and handed one to the complaining witness and showed Palmer how to match. Palmer and Arter then matched for cigars and continued in the game until they were matching for ten or twenty dollars at a time, continually urging the complaining witness to join with them. While this game was going on all three parties walked down Washington Street until they reached a point about the corner of Washington and Sansome Streets, where Arter explained that he had lost all his money matching with Palmer and owed the latter ten dollars. Palmer insisted that Arter was shy ten dollars and he must pay him, to which Arter replied that he had no more money. Palmer then said, ''That makes no difference, you know I have been paying all my bets, you must pay your bets.'' Arter then asked the complaining witness to lend him ten dollars until they returned to the boat. As the complaining witness took his wallet from his pocket and opened it to procure the ten dollars Arter shoved him from the sidewalk, seized his wallet and ran away with it. The complaining witness followed Arter but was unable to overtake him, and in the excitement lost sight of Palmer. A short time thereafter the complaining witness identified both Palmer and Arter at the city prison by placing his hand upon the shoulder of each. On this occasion, however, neither of the two made any response to the implied accusation of the complaining witness. They stood mute then and have sustained that position ever since.

Upon this appeal the appellant insists that there was an abuse of discretion on the part of the trial judge in granting a new trial to Palmer, as there is no question of a conflict of the evidence and no question of the sufficiency of

the evidence to sustain the verdict. The respondent relies upon the rule of *People* v. *Canfield,* 173 Cal. 309 [159 Pac. 1046], that an order granting a new trial to the defendant in a criminal case should not be disturbed on appeal except in a case of a clear and unmistakable abuse of discretion. The appellant does not question the rule as thus stated but insists that in this case the order should be reversed because it was based upon a misconception of the rules of law applicable to the evidence and not upon the legal sufficiency of the evidence to sustain the verdict. The case differs from *People* v. *Canfield* and other cases cited by respondent of similar import in that here the whole evidence stands without conflict by either testimony or inference, and that evidence unmistakably shows that the respondent joined with Arter in an unlawful common purpose to obtain the property of the complaining witness, and that from the time Arter and the complaining witness met Palmer down to the time Arter escaped with the purse Arter and Palmer were acting in concert to effect this purpose. This view was entertained by the trial court when the motion for a new trial was heard. In explaining the order about to be made the trial judge said, "And I have a conviction myself—here is a case where I have an absolute conviction. I am satisfied . . . that this man is a bunco man. I feel satisfied he cooperated with Arter . . . " And again, "Of course the charge is grand theft, and the evidence went a great way to show a cooperation or coordination between the two defendants. Apparently they were endeavoring to obtain money by either trick or device or false pretenses; but when the final act came, the act was the snatching of a purse."

The amendment to section 484 of the Penal Code in 1927 [Stats. 1927, p. 1046], defining the crime of theft was designed to eliminate the distinctions between the crimes of obtaining the property of another by false pretenses and by trick and device. The amendment includes in the definition of theft the taking of the property of another or appropriating it by any false or fraudulent pretense. It is also provided that "For the purpose of this section, any false and fraudulent representation or pretense made shall be treated as continuing so as to cover any money, property, or service received as result thereof."

■ It is apparent that the trial court treated the case as one of robbery from the person of the complaining witness, which is one of the circumstances constituting grand theft as included in section 487 of the Penal Code as amended in 1927. However, the offense became one of grand theft because of the first subdivision of section 487, the proof being that five hundred dollars in currency was taken from the complaining witness. The case presented by the state was therefore one in which the two defendants were concerned in a common design to commit the crime of theft and it was necessary for the state to prove, not that Palmer actually co-operated with his co-defendant in the snatching of the purse, but that this act was the probable result of the wrongful act agreed upon by them and was not "a fresh and independent product of the mind of one of the confederates outside of, or foreign to, the common design." (*People* v. *Kauffman*, 152 Cal. 331, 334 [92 Pac. 861].) Thus on a trial of five persons charged with murder committed by one of them while the parties were attempting to commit a burglary pursuant to a common design for that purpose it was said "all who participated in any such understanding or conspiracy are equally guilty of any crime which is the natural and probable consequence of such an enterprise, whether he personally commits the act or whether its commission is done by any one of his associates in carrying out the common purpose." (*People* v. *Wheaton*, 64 Cal. App. 58, 67 [220 Pac. 451, 455], citing cases.)

■ On the part of respondent it is argued that the district attorney was guilty of misconduct in his attempt to introduce evidence of other offenses on the part of Palmer. The purpose of the evidence was to show the combination between Arter and Palmer in the commission of other offenses and thus permit the jury to draw the inference from the facts proved in this case that the crime here was a part of their common design. We need not determine whether the evidence was admissible because the trial court refused to permit the district attorney to bring it before the jury and fully instructed the jury that they were to disregard the statements made by the district attorney in support of the admissibility of the testimony. There is no error in the record in this respect, but to our minds the trial court misconstrued the rules of law applicable to the case in granting the de-

fendant Palmer a new trial. See *People* v. *Tomsky*, 20 Cal. App. 672, 686 [130 Pac. 184]; *People* v. *Cavala*, 35 Cal. App. 154, 162 [169 Pac. 420].

The order is reversed with directions to the trial court to enter judgment upon the verdict.

Koford, P. J., and Sturtevant, J., concurred.