[Crim. No. 1665. Second Appellate District, Division Two.—July 19, 1928.]

THE PEOPLE, Appellant, v. CARL WESTCOTT, Respondent.

U. S. Webb, Attorney-General, James S. Howie, Deputy Attorney-General, Asa Keyes, District Attorney, and Wm. O. Russell, Deputy District Attorney, for Appellant.

Paul W. Schenck and Marcus L. Roberts for Respondent.

CRAIG, J.—The respondent was accused by the grand jury of Los Angeles County with the crime of murder, was convicted by a jury, and the judgment was reversed. (*People* v. *Westcott,* 86 Cal. App. 298 [260 Pac. 901].) Upon a second trial he was again convicted, the jury recommending imprisonment for life, whereupon he moved for a new trial, which was granted, and the People now appeal from the order granting such motion.

To state most favorably to the People the evidence upon which they rely for a reversal, Charles G. Westcott, the defendant's father, was shot as he opened the door of his residence in response to the bell at 909 South Cochran Street, and died shortly afterward. At the time of the shooting the decedent's widow saw a shadow and heard a footstep on the front porch. A Mrs. Heffelfinger, while walking westerly on Ninth Street, toward the Westcott residence, heard two shots in the direction of their house, and instantly looking up, saw the form of a person emerge from some brush on a vacant lot at the corner of Cochran

and Ninth Streets, where she also heard footsteps as of someone running. This witness testified that she saw two men near by, with whom she talked, but that she did not go to the house where she heard the shots. The men, Eldridge and Smith, swore that they heard shots and that after meeting Mrs. Heffelfinger they ran to the Westcott residence, looked in the window, and seeing the body of a man lying upon the floor, proceeded to the front door, whereupon they learned the victim's identity, rendered first aid, and summoned an ambulance. It appears that the crime was committed at about 8 o'clock P. M. The motorman and conductor of an east-bound street-car testified that at about 8:40 of that evening, as they were leaving Third and Sycamore Streets, about eight blocks westerly and northerly from the Westcott house, a bareheaded man ran up Sycamore Street from the south and boarded their car; that he appeared to be nervous, and continued to look backward through the rear windows of the car until it passed Ninth and Cochran Streets, when he walked to the front of the car and sat down; that he was talking to himself, appearing "distracted," and that he frequently threw his hair back from his forehead. Two porters at a barber-shop on West Sixth Street, in the center of town, testified that at about 9 o'clock P. M. a man resembling the defendant called at their stand and had his shoes shined; that he wore a pair of trousers like those introduced in evidence, in the left knee of which there was a tear similar to one appearing in the exhibit. A hostess at Wilson's dance studio at 616½ South Hill Street testified that the defendant called at the studio after 9 P. M. and danced for about fifteen or twenty minutes; that she noticed the tear in his trousers, and that he frequently threw his hair back with his hands. Police officers swore that the defendant was taken in custody at about midnight of the same date; that the left knee of his trousers was torn, and that they removed mustard pods, seeds, and leaves from the cuffs. From the testimony of other witnesses it appears that in the spring of 1926, a plank was braced from the ground to the top of a hedge at the corner of the Westcott house, and that on the date of the shooting, October 20, 1926, it had not been disturbed; that the hedge was then apparently in its usual condition, and that salt

grass and mustard were growing in the vacant lot between the house and the corner of Ninth and Cochran Streets. On the morning of October 21st the top of the hedge was mashed down, the plank lay flat on the ground, and there appeared in the soft soil the imprint of a person's knee; splinters on the plank contained fibers óf dark gray cloth of a texture similar to that of the defendant's suit. Three experts, after careful examination of the threads, seeds and leaves found upon Westcott's clothing, were of the opinion that they were identical with those discovered on the lot adjoining the scene of the homicide. The prosecution introduced in evidence a copy of the will of Charles G. Westcott, which devised and bequeathed about $93,000 worth of property to his children, and it was stipulated that respondent had since received $93,397.65 from his father's estate.

Aside from the resemblance of the cloth in respondent's trousers to the fragments found upon the plank, which, according to the theory of the prosecution, had been knocked down by someone in climbing over the hedge in flight, and the fact that seeds and leaves in the cuff of his trousers might have been accumulated by running through the vegetation on the adjoining lot, there is practically no evidence tending to connect him with the offense. Mrs. Heffelfinger was unable to say whether or not it was moonlight on October 20, 1926, or that there was a street light at the corner in question; she was unable to say whether the figure which ran from the house was that of a man or a woman. Eldridge and Smith both looked in the direction from which the report of the shots came, but neither of them saw any person or heard any footsteps. The motorman and conductor, although positive that the man said by them to resemble the respondent was bareheaded, could not swear that he had no hat with him; both testified that they would not attempt even to swear that Westcott was the man who boarded their car; they thought there was a resemblance, but, as testified by the conductor, that was all he "would venture to say." Respondent's wife testified that there was salt grass and mustard growing "all over the lot" at their home in Venice, and that her husband walked around in the lot with their baby every day. The bootblacks swore that there was no dirt upon his shoes when

they were shined about an hour after the occurrence in controversy, but that there was an "average amount of dust"; neither of these two witnesses thought that he was bareheaded, and one of them stated that he was sure the defendant had a hat.

The defendant ·did not take the stand, nor did any witness who knew him testify as to his whereabouts prior to 9 o'clock on the evening of October 20, 1926, an hour after the commission of the offense. The mere fact that within that time he could have fired the shots, run through the vacant lot, boarded a street-car eight blocks away, and arrived at the center of town, is but a series of conjectures. As stated in *People* v. *Smith,* 55 Cal. App. 324 [203 Pac. 816]:

"But the mere fact that an accused person had an opportunity to commit the crime with which he is charged is of itself only a circumstance, from which, with other circumstances, guilt may be conjectured or inferred; and it is the established rule that an incriminating circumstance from which guilt may be inferred must not rest upon conjecture. It is not permissible to pile conjecture upon conjecture. We cannot build one inference upon another. . . . It would, said Chief Justice Denio in *People* v. *Kennedy,* [32 N. Y. 141], *supra,* be 'like the blind leading the blind.' The rule as stated by the New York court in the Kennedy case, is that circumstantial evidence 'consists in reasoning from facts which are known or proved, to establish such as are conjectured to exist; but the process is fatally vicious if the circumstance from which we seek to deduce the conclusion depends itself upon conjecture."

 We think the trial court was wholly warranted in granting the motion for new trial in the instant case. In any event, when the trial judge in a criminal case, sitting as he does as a thirteenth juror, is not convinced to a moral certainty and beyond a reasonable doubt that the evidence is sufficient in character and weight to justify a conviction, it is not for a reviewing court to say as a matter of law that the granting of a new trial constituted an abuse of discretion. Having observed the witnesses and the jurors, and having had an opportunity for testing the truth of the witnesses' statements, he may have doubted the adequacy of the identification of the defendant, or the

weight apparently accorded the circumstantial evidence by the jury. The rule is established beyond cavil that in cases such as the one before us there is no basis for questioning the discretion of the superior court or substituting that of the appellate court therefor. (*People* v. *Taylor*, 80 Cal. App. 658 [252 Pac. 729]; *People* v. *Canfield*, 173 Cal. 309 [159 Pac. 1046].)

The order granting a new trial is affirmed.

Works, P. J. and Thompson, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 17, 1928.

All the Justices present concurred.