## Commonwealth v. Metcalfe.

(Decided June 3, 1919.)

### Appeal from Letcher Circuit Court.

1. Larcency—Property Subject of Larency—Possession.—Where one casts away personal property, with the intention to abandon it, he loses both the title and possession of the property, and it is no longer a subject of larceny.

2. Larceny—Property Subject of Larceny—Finder—Possession.—If one loses personal property, inadvertently or carelessly, the constructive possession of it remains, in him, and if a finder, knowing the owner of it, or having reasonable grounds for believing that the owner will be discovered and will claim the property, takes it into his possession and removes it from the place where found, with the felonious intention of appropriating it to his own use and benefit, and to permanently deprive the owner of it, it is a larceny.

3. Larceny—Finder of Lost Property.—The finder of lost property, who takes it into his possession with the intention of returning it to the owner, is not guilty of larceny, nor is he guilty, if at the time, he takes it into his possession, he does not know the owner, and has no reasonable grounds for believing, that the owner will be discovered and claim the property.

CHARLES H. MORRIS, Attorney General, and R. MONROE FIELDS, Commonwealth's Attorney, for appellant.

D. D. FIELDS, D. I. DAY and T. B. McGREGOR for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming decision granting a new trial and certifying law.

This is an appeal by the attorney for the Commonwealth of Kentucky, from a decision of the circuit court, granting a new trial to the appellee, Fred Metcalfe, who was convicted of the crime of grand larceny. The attorney for the Commonwealth has brought the case, here, by appeal, as provided by sections 335 and 337, of the Criminal Code, insisting, that it is important. to the correct and uniform administration of the criminal law, that this court should determine certain questions, which arose in the trial, and to reverse the decision which granted a new trial. The only exception saved by the Commonwealth's attorney, was to the decision granting the new trial, and hence, the correctness of that decision will only be considered. Comnth. v. Brand, 166 Ky.

753. The grounds upon which the new trial was granted, were as follows:

(1) The instructions were incorrect, and the ones given did not embrace the entire law, applicable to the case.

(2) The verdict was contrary to the law and the evidence.

(3) The evidence was insufficient to sustain the verdict.

To determine these questions, a statement of the substance of the testimony will be necessary.

The appellee, Fred Metcalfe, was an employe of a telephone company, and in charge of the room, wherein a telephone exchange was maintained, in the town of Whitesburg. On Friday, Fess Whittaker, was in the exchange, and there, he and the appellee, each, indulged in a social dram of spirits, as many other good and worthy people have been wont to do, in times, now in the glimmering past. On the evening of the same day, and after nightfall, Whittaker, accompanied by two other men, repaired to the "exchange" for the purpose of slaking their thirst, with something stronger than the limpid waters of the Cumberland, and, after arriving, each took a dram. One of the party bought a certain article, the character of which the evidence does not disclose, from the appellee, and requested Whittaker for a loan of fifty cents, with which to pay appellee for the article. Whittaker had, in the watch pocket of his pantaloons, two pieces of currency, one a two dollar bill and the other, a twenty dollar bill. Shortly, previous to that time, he had rolled the two bills together and put them in the pocket. He took out of his pocket and reached to his friend, the two dollar bill, who presented it to appellee, and the latter returned to him the sum of $1.50, which Whittaker received. Whittaker and his companions, then departed from the "exchange," and he repaired to his home nearby, and proposed to give the twenty dollar bill to his wife, when he discovered, that it was no longer in his pocket, where he had placed it. In company with one of his companions, he immediately, returned to the "exchange" and making a statement in regard to the loss of the bill, made inquiry of appellee, as to his knowledge of it. Appellee replied, that he had not seen it, and then providing a

light, he assisted Whittaker and his friend, to search
the floor of the room and then, they descended the stair-
way, and made search of it, and the route over which
Whittaker had traveled in going to his home. The search,
however, was fruitless, and they did not find the money.
On the following morning, the appellee made inquiry of
Whittaker, as well as of the man, who accompanied him,
if they had found the money, and being informed by
them, that they had not found it, he stated to each
of them, that he had made another search on that morn-
ing. On the following Sunday morning, Whittaker was
relating the circumstances of the loss of the money, and
that he had dreamed, that he saw it hanging between
wires, when Cain Polly informed him, that he was in the
"exchange" on the day before, and that appellee raised
the lid to the telephone switch board box, and he saw a
bill of money rolled up and placed between the wires,
and appellee said, that he intended to buy two quarts of
whisky with it, for use at Christmas. Whittaker secured
the services of the sheriff and, together, they went to the
"exchange" on Sunday, but, appellee was absent at Sun-
day school, and the door to the room was fastened. They
unlocked it and, making a search, found a twenty dollar
bill, similar in appearance to the one lost, rolled up and
sticking between the wires, under the lid of the switch-
board box. The money which was lost, was the prop-
erty of Whittaker, and its appropriation by any one,
was without his consent. Appellee was directly arrested
upon the charge of stealing the money, and when in-
formed by the sheriff, of the finding of the money, said
that he did not deny that he placed the money in the
box. He, also, stated to the county judge, when carried
before him, that, on the morning after Whittaker and the
two men, who accompanied him, were in the "exchange,"
he found a twenty dollar bill on the floor, and intended
to give it to Whittaker but was called out on the tele-
phone line and forgot to do so.

The appellee testified in accordance with the fore-
going in regard to Whittaker being in the office, and the
changing of the two dollar bill, the return of Whittaker
in search of the twenty dollar bill, and the search made
for it; that he inquired of Whittaker, if he had found the
bill on Saturday morning, but, this was previous to his
finding it; that afterward, in clearing up the trash, he

found the bill and placed it in the box, between the wires; that he showed the bill to Polly, on Saturday, and stated, that he could buy a gallon of whisky with it, but that it was not his property; that he was required to go out on one of the telephone lines shortly thereafter, to make repairs, and did not see Whittaker after finding the money, and as he left the office, Hillard Brown told him, that he had found a twenty dollar bill, and he concluded, not to give to Whittaker the bill, found by him, until he should be satisfied, that it was the one, lost by Whittaker. He said, that in addition to saying to the sheriff, that he did not deny placing the money in the box, he said to him, that he did deny that he knew, who was the owner of it. Hillard Brown deposed that he did find a twenty dollar bill, but, that he did not remember of having told appellee about it, and the sheriff deposed that appellee did not deny to him, that he knew to whom the money belonged.

Neither Whittaker, nor either of the parties in the office, at the time, he is supposed to have lost the bill, saw anything of a twenty dollar bill, at the time. Since the amendment of 1910, to section 281, Criminal Code, it has become well settled, that the decision of a court, denying or granting a new trial, is subject to exception and to review upon appeal, and the right of appeal from such a decision, may be exercised by the Commonwealth, as well as by the defendant. Wilson v. Com. 140 Ky. 3; Tucker v. Com., 145 Ky. 89; Com. v. Harris, 147 Ky. 702.

It is now generally, if not universally, held, that lost property may be the subject of larceny. To constitute a larceny of lost property, it is essential, that it be taken from the possession of some one, either the owner or some one having possession for the owner. It must, also, be taken against the consent of the possessor, so as to amount to a trespass, upon the possession, either in fact, or in contemplation of law. Where one has inadvertently or carelessly lost personal property, it remains in the constructive possession of the owner. The owner does not lose his constructive possession of it, unless he casts it away, with the purpose to abandon it, in which state of case, he loses both the possession and the title. The finder of personal property, which has been inadvertently or negligently lost, and who takes it

into his possession, thereby severs the possession of the owner, but, the finder does not commit larceny, in so doing, unless he takes it with the intention to appropriate it to his own use and to permanently deprive the owner of his property and use of it. If he takes it with such intention, he thereby, commits the trespass necessary to constitute larceny, which he does not commit, if he takes it with the intention of returning it to the owner, if he knows him, or if he does not know the owner, to whoever the owner may be. As in larceny of any other property, the finder of lost property, before he becomes guilty of larceny, must make an asportation of the property, or carrying away in the familiar term of the law, so as to oust the constructive possession of the owner, at least for a distinct time. To make the necessary asportation to constitute a larceny, there must be a severance of the property from the possession of the owner, for a distinct, appreciable time, however, short, and any removal of the entire property from the place where it was found, with a felonious intention, is a sufficient asportation to make out the crime of larceny, although the removal may be only from the place where the property is found, to another place in the same room. 17 R. C. L. 19-20; 1 Roberson's Criminal Law, sec. 413; 2 Russell on Crimes, 152.; 3 Greenleaf's Evidence, 154; 15 Cyc. 22; Adams v. Com., 153 Ky. 88. The finder of lost property, which has been abandoned, becomes the owner of the property. The finder of lost property, where there is no clue to the ownership, although inadvertently or negligently lost, becomes the owner of the property where the owner is never discovered and fails to assert his ownership, and hence, a finder of lost property is not guilty of larceny, when he takes possession and converts to his use, property, the owner of whom, he does not know, and where he has no clue to the ownership, but, if the finder has a clue to the ownership of the property, the taking will be larceny, if feloniously done. 17 R. C. L. 38; 25 Cyc. 37; Hester v. Com., 16 K. L. R. 783. A clue to the ownership is the existence of such facts and circumstances at the time of the finding, as constitute reasonable grounds for believing, that the owner will be discovered, and will reclaim his property, as when one finds lost property, in a shop or store, he must reasonably expect, that the owner, having discovered his

loss, will return and claim the property. Hence, under the facts proven and admitted by the appellee, in this case, he was guilty of larceny, if, at the time he found the money he took it into his possession and placed it between the wires, in the box, he knew who was the owner of it, or had reasonable grounds for believing, that the owner of it would be discovered, and would claim the money, and further, if he took and removed it, with the intention to appropriate it to his own use and to permanently deprive the owner of it.

The only issues, as to the facts, in the case, are, whether the appellee, when he took the money, into his possession and removed it from the place of its finding, he knew who was the owner of it, or if he did not know, who the owner was, did he have reasonable grounds for believing, that the owner would be discovered, and the money claimed, and if so, whether he took the money, with the intention of returning it to the owner, or did he take it with the felonious intention to convert it to his own use and benefit and to permanently deprive the owner of it. These are facts, which must be determined from all the circumstances relevant to the transaction, the fact, that he received notice from Whitaker, in a short time, of the loss of the money; the search made without finding it, in the room; the declaration to Whittaker on the following morning, that he had made another search without finding it; his admission, that he did find it; his statements to Polly; his meeting with Whittaker on the following evening, and failing to notify him, that the bill had been found by him; his proximity to the place of Whittaker's residence, when he did find it, without notice to Whittaker; the length of time the bill was retained by him: his declarations to the sheriff and the county judge, and the reasons, given by him for his conduct are all circumstances and facts, which the jury may consider, as well as any other relevant facts. The information received by him from Brown, that the latter had found a twenty dollar bill, is not competent as shedding any light upon his motives, at the time, he found and took possession of the money, as he had then done so, but, it is competent as shedding light upon his failure, thereafter, to return the money to Whittaker or to tell him about finding it. Under these facts, the question of the intention of the appellee, when taking and

carrying away the money, is peculiarly one for the jury. Com. v. Williams, 96 Ky. 1; Blackburn v. Com., 28 K. L. R. 96.

As the action will again have to be tried, we forbear expressing any opinion as to the weight or convincing quality of the evidence, but, suffice it to say, that it was such as required a submission of the case to the jury, and as it appears upon the record, a verdict of guilty does not seem to be flagrantly against the evidence, or that the evidence is palpably insufficient to support such a verdict. If the circuit court, however, granted the new trial on account of the insufficiency of the evidence, in the opinion of the judge, to sustain the verdict, this court is not justified in reversing the decision, unless it appeared, that the circuit court abused its discretion in granting the new trial. A decision by the trial judge granting a new trial, is viewed less critically and more effect is given to it, than a decision denying a new trial. The reason of this is, that a new trial places the parties, where they were before, while a decision denying a new trial concludes their rights, and hence, a broad discretion is necessarily vested in the trial judge, who sees the witnesses, and knows of the degree of intelligence they have, and their apparent candor, and must necessarily see and know much of a trial, which a record in writing, will not impart to us, and therefore, unless it appears, that the trial judge abused his discretion in granting a new trial, his decision to that effect, will not be disturbed. Com. v. Harris, 149 Ky. 702; Wilhelm v. Louisville Ry. Co., 147 Ky. 196; Miller v. Ashcraft, 98 Ky. 314; Brown v. L. & N. R. R., 144 Ky. 546.

The instructions, while substantially embodying the law of the case, to the extent, that they were not, upon the facts, prejudicial to the substantial rights of either of the parties, they were not, altogether, in accordance with the law of the case, as heretofore stated, and upon another trial, if the facts are substantially the same, the following instructions should be given in lieu of those given upon the former trial.

(1) The jury is instructed, that if it believes, from the evidence, beyond a reasonable doubt, that in Letcher county, and before the finding of the indictment, the witness, Fess Whittaker, did, then and there, lose a bill of the currency of the United States and of the denomi-

nation and value of twenty dollars, and the same mentioned, in the evidence, and of which the said Whittaker was the owner, and that he lost custody of it involuntarily and without intention to abandon it, and the defendant found the bill, and, then and there knew who was the owner of it, or not knowing, who was the owner of it, had reasonable grounds for believing, that the owner of it would be discovered and would claim the bill, and did, then and there, feloniously, and against the consent of said Whittaker, and with the intention of appropriating the bill to his own use and benefit, and to permanently deprive the owner of the use and benefit, of same, took it into his possession and removed it into another place, it, the jury, will find the defendant guilty as charged in the indictment and fix his punishment at confinement in the penitentiary for a period of not less than one year, nor more than five years, in its discretion, controlled by the evidence.

(2)  Although the jury may believe from the evidence, beyond a reasonable doubt, that the defendant found the bill, mentioned in the evidence and took same into his possession and removed it to another place, and, then and there, knew who was the owner of the bill, or had reasonable grounds to believe, that the owner of the bill would be discovered and would claim the bill, yet, if it believes, from the evidence, that the defendant did not intend to convert it to his own use and benefit and to permanently deprive the owner of its use and benefit, but intended, at the time to return it to Whittaker or to its owner when discovered; or if the jury believes, from the evidence, that at the time the defendant took the bill into his possession and removed it, if he did so, that he did not know who the owner of it was, and did not have reasonable grounds for believing, that the owner of it would be discovered, it, the jury, should find the defendant not guilty.

(3)  If the jury has a reasonable doubt of the defendant having been proven to be guilty, as set out in instruction No. 1, it will find him not guilty.

It is therefore ordered that the order granting a new trial be affirmed, but the opinion is ordered to be certified to the trial court, as the law of the case.