[No. 35796. En Banc. May 17, 1962.]

THE STATE OF WASHINGTON, *Appellant,* v. EARL CLIFFORD
TAYLOR *et al., Respondents.*\*

*Charles O. Carroll* and *James E. Kennedy,* for appellant.

*Henry Opendack,* for respondents.

\*Reported in 371 P. (2d) 617.

FOSTER, J.—This is an appeal by the State of Washington from an order granting two respondents a new trial on a joint information charging second-degree burglary. Because no question arises as to the sufficiency of the proofs to sustain the verdict of guilty, it is unnecessary to narrate the evidence.

The court granted both defendants a new trial because of the voluntary injection by a member of the Kent police department that the respondent Taylor had a parole officer. Instantly, counsel moved for a mistrial. It was denied.

The incident occurred during the state's case in chief while a deputy prosecuting attorney was examining the witness. The entire episode is as follows:

"Q. Now, when was the next time you talked to either Gilcrease or Taylor? A. On the 20th. I talked to Taylor and Gilcrease, both. Q. And do you recall which one you talked to first? A. I believe it was Taylor. Q. And where did that take place? A. At the Renton City Jail. Q. He had been moved to Renton at that time? A. Yes. Q. What did you talk about at that time? A. The burglaries. Q. And did he tell you anything about them at that time? Would you just tell us what took place during this conversation? A. During that day, or that period of interrogation, I had contacted his parole officer, Mr. Snow, and I had been trying to get him to give me a statement admitting the burglaries. MR. OPENDACK: Your Honor, please, I will have to move for a mistrial. THE COURT: On what grounds? MR. OPENDACK: On the grounds that nobody has a parole officer unless they have been convicted of a crime. THE COURT: I will deny the motion. MR. OPENDACK: This forces the defendant to take the stand under the circumstances. THE COURT: I will deny the motion. MR. OPENDACK: I would like to renew it again without the jury being here. THE COURT: Yes, you may have that privilege. Q. What did you talk about? A. Where were we? Q. Well, you had called somebody and you were having— A. Well, I had previously contacted the parole officer of the defendant, Taylor, and I met him at Renton. Then I continued my interrogation of Taylor . . ."

From the position taken on the motion for a mistrial, the respondents' counsel has never receded, but, on the

contrary, has at all times steadfastly maintained it. After the objection was overruled, the witness reiterated his allusion to the parole officer.

Both during the state's case in chief and at its close, the motion was renewed and denied. An offer was made by the court to instruct the jury to disregard the statement, but declined by respondents' counsel because it would only emphasize the error, in which view the trial court ultimately concurred.

It should be noted that the offending remark was not responsive to the prosecutor's question and is not claimed to be misconduct. The court was at pains to point out that neither counsel was to blame for the error.[1]

After post-trial reargument, the court ordered a new trial. The court, in a memorandum opinion, stated its reasons clearly and in detail.

" . . . Mr. Opendack promptly moved for a mistrial and in response to a question by the court stated his grounds therefor. The motion was denied, and Mr. Opendack asked permission to renew it again in the absence of the jury. Mr. Kennedy again asked the witness what they had talked about and provoked a second unresponsive answer, the witness saying that he 'had previously contacted the parole officer of the defendant * * * .'

"The jury was thereupon excused, the motion for a mistrial was renewed, and the matter was discussed at some length. At this point the court offered to instruct the jury to disregard the references to the parole officer. This offer was declined by Mr. Opendack. He stated that he felt (and I agreed with him) that such an instruction would only serve to emphasize the matter and would do no real good. The motion for a mistrial was denied, the jury was brought back in, and the trial continued.

" . . . I had not caught the import of the first reference to the parole officer, and when Mr. Opendack moved for a mistrial I inquired as to the grounds. Mr. Opendack's answer to my inquiry further emphasized the significance of the remark. Even then I failed to caution the witness, with the result that he immediately thereafter repeated

---

[1]"First, let me emphasize that neither counsel was at all at fault in this matter. . . ."

the offending statement while making another completely unresponsive answer.

"There is, it seems to me, a great probability that all of this may have revealed to at least some members of the jury that the defendant Taylor had been in previous trouble with the law. They were not told in so many words that Taylor had previously been convicted of another crime, but it was made evident that he was on probation. Laymen might easily conclude from this that he had committed one or more previous offenses."

The State of Washington has the right to appeal in a criminal case from an order granting a defendant a new trial. This right exists only by reason of statute or rule (24 C. J. S. 1034, § 1659(e)), and is a very recent development.[2] It was authorized in Washington in 1893,[3] but was limited to setting aside the indictment or information or arresting judgment for the insufficiency of the indictment or information or for an error of law. Rem. Rev. Stat., § 1716(7).

By 1932, in only eleven states, including Washington,[4]

---

[2] For a history of appeal by the state in criminal cases, see Orfield, Appeal by the State in Criminal Cases, 15 Ore. L. Rev. 306 (1936); In re State Appeals in Criminal Prosecutions, 3 S. C. L. Q. 154 (1950); and Orfield, Criminal Appeals in America, chapter 3, p. 55.

[3] ". . . But an appeal shall not be allowed to the state in any criminal action, except when the error complained of is in setting aside the indictment or information, or in arresting the judgment on the ground that the facts stated in the indictment or information do not constitute a crime, or is some other material error in law not affecting the acquittal of a prisoner on the merits." Laws of 1893, chapter 61, § 1(7), p. 119, 120.

[4] In 1901, this court held that the state did not have the right to appeal from an order granting a new trial. *State v. Johnson,* 24 Wash. 75, 63 Pac. 1124.

The right of the state to appeal from an order granting a new trial was first authorized by Laws of 1925, Ex. Ses., chapter 150, § 7:

". . . The state may have a right of appeal to the Supreme Court, upon . . . (4) An order granting to any one, convicted by a jury, a new trial on any grounds; . . ."

Under the court's rule-making power (see *State ex rel. Foster-Wyman Lbr. Co. v. Superior Court,* 148 Wash. 1, 267 Pac. 770), in 1950, the statute was transferred to Rule on Appeal 14(8), RCW Vol. 0, which is as follows:

"In criminal cases the state may appeal to the supreme court, upon

was such an appeal permitted from an order granting a new trial.[5] This, perhaps, then, accounts for the relative dearth of decisional law respecting the extent of appellate review of such orders.

We have here the antithesis of *State v. Johnson, ante* p. 21, 371 P. (2d) 611 (1962), in which this court affirmed an order denying a motion for a new trial. There the defendant claimed he was denied a fair trial because a nonprofessional witness inadvertently referred to his parole officer. The remark was instantly stricken and the jury instructed to disregard it. The reason for the decision is that the trial judge was of the opinion that no prejudice was created. We declined to interfere with his discretion.

Here, on the other hand, we are dealing with the opposite situation. The witness was a member of the Kent police department holding the rank of sergeant. The injection of the existence of Taylor's parole officer was deliberate. This is emphasized by the fact that the witness reiterated the comment about the defendant's parole officer as soon as the motion was overruled. The trial court had

giving the same notice as is required of other parties, when the error complained of is based on the following: (1) The setting aside of an indictment or information; (2) The sustaining of a demurrer to an indictment or information; (3) An order arresting judgment on any grounds; (4) An order granting to anyone, convicted by a jury, a new trial on any grounds; (5) Any order which in effect abates or determines the action, or discontinues the same, otherwise than by an acquittal of the defendant by a jury: Provided, That in no case shall the state have a right to an appeal where the defendant has been acquitted by a considered verdict of a jury."

This statute was repealed by Laws of 1957, chapter 10, § 3.

[5] In 1932, only eleven states permitted an appeal by the state from an order granting a defendant in a criminal case a new trial:

"It is provided in the following statutes that the state may appeal from an order granting a new trial: Ariz. Rev. Code (1928) § 5136; Cal. Pen. Code (1925) § 1238(3); Idaho Comp. Stat. (1919) § 9069(2); La. Code of Cr. Pr. (1929) arts. 540, 541 (inferentially); Mont. Rev. Codes (1921) § 12108(2); Nev. Rev. Laws (1912) § 7286(2); N. D. Comp. Laws (1913) § 10993(2); S. C. Code of Laws (1922), Civ. Pr., §§ 26 D2, 645; S. D. Sess. Laws (1919) 146, § 5032(4); Wash. Comp. Stat. (Remington Supp. 1927) § 2183-1(4); Wis. Stat. (1929) § 358.12(4)." 81 U. Pa. L. Rev. 340, 341, note 4.

the same opportunity here to determine the existence or absence of prejudice as in the *Johnson* case, and it was its conclusion that prejudice did ensue for which reason a new trial was ordered.

Here we deal with an evidential harpoon which would only be aggravated by an instruction to disregard. Such was the view of the trial judge who, in his memorandum opinion, said:

" . . . At this point the court offered to instruct the jury to disregard the references to the parole officer. This offer was declined by Mr. Opendack. He stated that he felt (and I agreed with him) that such an instruction would only serve to emphasize the matter and would do no real good. . . ."

That the prejudice from this evidential harpoon is only aggravated by an instruction to disregard is exemplified by the Oklahoma Court of Criminal Appeals in *Wright v. State,* 325 P. (2d) 1089, 1093 (Okla. Crim. 1958), which, in reversing a conviction upon this ground, was provoked to say:

"This type of testimony has often been referred to as an 'evidential harpoon' that has been wilfully jabbed into the defendant and then jerked out by an admonition to the jury not to consider the same. This court has never condoned, but often criticized a witness being intoxicated with eagerness in an all out effort to obtain a conviction. We are fully aware that these harpoons are often thrown through inadvertence or ignorance of the law, but we cannot lead ourselves to believe that such was the case. The witness Hagstrom is one with long experience in law enforcement who now occupies the position of Narcotic Agent for the State of Oklahoma, affiliated with the Attorney General's office, which office serves as an advisor of the law to most state officials. Surely, he was conscious of the rules of evidence that prohibit such actions of a witness. It would seem unreasonable to say he was unaware of the consequences of his actions. It is of such universal recognition that elaborating seems useless to recite again that to place a defendant's character or reputation in issue before it becomes an element of the trial is error of the worse type. Evidence relative to previous conviction, with the exception of those alleged in the information is permitted for one

purpose and one only and that is to effect the credibility of the witness. See Tit. 12 O.S.A. § 381. And where defendant did not present himself as a witness nor present testimony of good character, it is forbidden. In a trial of a criminal case the issue is singular, as to guilt or innocence: 'Did the defendant commit the crime charged?' and not upon the question, 'Has the defendant the reputation of committing crime before.' "

It is impossible to accurately determine the number of state appeals in criminal cases from orders granting new trials.[6] With the exception of *State v. Douglas,* 193 Wash. 425, 75 P. (2d) 1005,[7] this court has never reversed such an order although a departmental opinion in *State v. Brent,* 28 Wn. (2d) 501, 183 P. (2d) 495,[8] did so, but thereafter

---

[6]There are seven Washington cases, but only *State v. Douglas,* 193 Wash. 425, 75 P. (2d) 1005, reversed the order granting a new trial. The cases are: *State v. Olds,* 42 Wn. (2d) 503, 256 P. (2d) 488; *State v. Brent,* 30 Wn. (2d) 286, 191 P. (2d) 682; *State v. McDaniels,* 30 Wn. (2d) 76, 190 P. (2d) 705; *State v. Douglas, supra; State v. Cornell,* 152 Wash. 120, 277 Pac. 458; *State v. Loewenthal,* 149 Wash. 88, 270 Pac. 136; and *State v. Morgan,* 146 Wash. 109, 261 Pac. 777.

[7]*State v. Douglas, supra,* reversed an order granting a new trial. (For criticism of the opinion, see 13 Wash. L. Rev. 226.) The trial judge's reason for granting a new trial was the absence of a material witness for whom a subpoena had been placed in the hands of the sheriff for service, but which was not served because of an erroneous address. This was all known to the respondents' counsel at the time of trial. No continuance was requested. Upon the state's appeal, the order granting a new trial was reversed. In the principal opinion in which three judges in addition to the writer joined, the basis was a lack of diligence. Three judges agreed to the reversal because of the failure to request a continuance after discovering the absence of the witness, and two judges dissented.

[8]In a student case note by Roger L. Olson (23 Wash. L. Rev. 148), now prosecuting attorney of Franklin County, it is said of the departmental opinion:

"The effect of this decision would be to greatly limit the trial court's discretionary power to grant a new trial. However, in view of the application of the wrong statute and, in effect, the overruling of the *Brammer* case, *supra,* and all subsequent decisions without mentioning them or discussing the prior Washington rule, the authority of the instant case is weak and might not be followed when the question is properly presented and considered."

After the departmental opinion was reversed by the court *en banc,*

the order was affirmed on rehearing, 30 Wn. (2d) 286, 191 P. (2d) 682. Judge Hill reported that he had found but twenty-eight cases, both civil and criminal, in the history of this court (1948) in which an order granting a new trial had been reversed. Perhaps the reason is, as the court said:

" . . . a much stronger showing of an abuse of discretion will ordinarily be required to set aside an order granting a new trial than one denying a new trial. . . ." *State v. Brent,* 30 Wn. (2d) 286, 290, 191 P. (2d) 682.

After reviewing the conflict in the evidence, the court concluded:

" . . . There being a substantial conflict in the evidence upon controlling issues, a majority of the court has taken the position that, while it does not believe that the verdict is contrary to either the law or the evidence, it cannot say that the trial judge abused his discretion in granting a new trial on the ground that it was contrary to the evidence." *State v. Brent,* 30 Wn. (2d) 286, 300, 191 P. (2d) 682.

No case has been called to our attention and the deputy prosecuting attorney in oral argument forthrightly admitted that he had been unable to find a single case in which an order granting a new trial in a criminal case had been reversed on a state's appeal in comparable circumstances.[9] Perhaps there is one, but, if so, it still remains hidden, notwithstanding exhaustive research.

---

and the order granting the new trial affirmed, the Washington Law Review appended to the student note the following editor's note:

"On rehearing *en banc,* the court reversed the departmental decision and held substantially in accordance with this analysis, State v. Brent, 130 W.D. 265, 191 P. (2d) 682 (1948)."

[9]Last year the Supreme Court of Pennsylvania dismissed an appeal by the commonwealth from an order granting a new trial of one convicted of murder because the decision was based upon an admixture of law and fact. Chief Justice Charles Alvin Jones, for a unanimous court, stated the reasons as follows:

"How an appellate court, with only an inanimate record in cold print before it, could possibly be expected to sense, gauge, and justly appraise the atmosphere prevailing in the court below at the time of trial and thereupon competently determine whether or not attending

Pure questions of law offer no difficulty, but when, as here, the order is granted because of the very atmosphere of the courtroom, there is unanimity of judicial opinion that an appellate court will not substitute its judgment for that of the trial court.

In *People v. Canfield*, 173 Cal. 309, 159 Pac. 1046,[10] the trial judge granted a new trial because of the admission of evidence of other crimes. He was of the view that such fact may have had a prejudicial effect upon the jury. The state appealed, but the order granting Canfield a new trial was affirmed by the Supreme Court of California. In a unanimous opinion, that court stated its reasons therefor as follows:

" . . . The judge who presided at the trial of the cause, who heard the testimony, who observed the jurors and had an opportunity also of testing the truth of the defendant's statements by noticing his demeanor, was in a peculiarly favorable position for determining justly the question whether or not the defendant had been accorded a fair trial. We cannot follow the mental processes of the judge. He may have been profoundly impressed with the influence upon the jury, to Canfield's injury, of the introduction of the evidence tending to prove another offense. Or he may have doubted the identification by the witnesses for the prosecution of Canfield as the man who passed as Rabild in the transactions leading to the sale of the note and mortgage. We can hardly manufacture in fancy a hypothetical situation in which a reviewing court would be justified in questioning the discretion of a trial court who should grant a new trial in a case involving a criminal charge. Surely there is no basis in the case before us for the substitution of the discretion of this court for that of the superior court. We must assume that the learned judge

circumstances at trial were prejudicially inflammatory, it is impossible to perceive. Obviously such an inquiry involves primarily a factual question which lies peculiarly within the province of the trial court to resolve. . . ." *Commonwealth v. Melton*, 402 Pa. 628, 168 A. (2d) 328.

[10]This policy has ever since been followed in California. *People v. Carlin*, 3 Cal. Rptr. 301, 312; *People v. Brown*, 79 Cal. App. (2d) 383, 388, 179 P. (2d) 652; *People v. Megladdery*, 40 Cal. App. (2d) 748, 768, 106 P. (2d) 84.

of the trial court acted with a full appreciation of his duties and obligations, with the cited section of the constitution in mind, and that the conclusion which he reached was not governed by any idle nor any mere technical reasons."

Based upon the *Canfield* case, *supra,* the Supreme Court of Nevada in *State v. Sorenson,* 73 Nev. 218, 223, 315 P. (2d) 508 (1957), reached the same conclusion. The Supreme Court of North Dakota has taken the same position (*State v. McEnroe,* 68 N. D. 615, 622, 283 N. W. 57), as has the Supreme Court of South Dakota. *State v. Lambert,* 60 S. D. 172, 174, 244 N. W. 118; *State v. Ruhaak,* 59 S. D. 636, 637, 241 N. W. 793. The Supreme Court of Kansas is in accord. *State v. Miller,* 154 Kan. 267, 269, 118 P. (2d) 561.

The Supreme Court of Kentucky in *Commonwealth v. Metcalfe,* 184 Ky. 540, 546, 212 S. W. 434, affirmed an order granting a motion for new trial upon the state's appeal.[11]

 There is a fundamental difference between the question presented on an appeal from an order granting and one denying a new trial, and especially is this so where the trial court has granted the motion because of its peculiar advantage in observing the effect on the jury of prejudicial evidence. If this were an appeal from an order denying a new trial, the cases cited by the state would be applicable because the appellate court in those instances relied upon the determination of the trial court that there was no prejudice.

On the other hand, when the court has granted a new

---

[11]". . . A decision by the trial judge granting a new trial, is viewed less critically and more effect is given to it, than a decision denying a new trial. The reason of this is, that a new trial places the parties, where they were before, while a decision denying a new trial concludes their rights, and hence, a broad discretion is necessarily vested in the trial judge, who sees the witnesses, and knows of the degree of intelligence they have, and their apparent candor, and must necessarily see and know much of a trial, which a record in writing, will not impart to us, and therefore, unless it appears, that the trial judge abused his discretion in granting a new trial, his decision to that effect, will not be disturbed. Com. v. Harris, 149 [147] Ky. 702; Wilhelm v. Louisville Ry. Co., 147 Ky. 196; Miller v. Ashcraft, 98 Ky. 314; Brown v. L. & N. R.R., 144 Ky. 546." *Commonwealth v. Metcalfe,* 184 Ky. 540, 212 S. W. 434.

trial, it has decided that prejudice did ensue. The trial judge, by his very presence, is in a favored position. It has been reiterated in appeals from orders granting new trials in both civil and criminal cases that a much stronger showing is required to overturn an order granting the new trial than denying a new trial. The question is: Did the respondents have a fair trial? The trial judge thought that they did not. The question is not whether this court would have decided otherwise in the first instance, but whether the trial judge was justified in reaching his conclusion. In that respect, he has a very wide discretion.

█ The state argues that the remark respecting the parole officer applied alone to Taylor and not to respondent Gilcrease for which reason Gilcrease should not be granted a new trial. It must be remembered that both defendants were charged and tried jointly with the commission of the same offense, and that the same evidence was offered against each of the respondents. The trial judge disposed of the contention in the following language:

"I at first thought that perhaps Taylor is the only defendant entitled to a new trial, as he was the one to whom the witness was referring in speaking of the parole officer. However, the two defendants are in this thing together, and both of them are either innocent or both are guilty. What hurts one, hurts the other. Accordingly, I have concluded that, if the defendant Taylor did not have a fair trial, the same thing must be said as to the defendant Gilcrease. Both defendants will therefore be given a new trial."

We are not disposed to interfere with the discretion the trial court exercised.

The order granting a new trial is affirmed.

WEAVER, ROSELLINI, and HUNTER, JJ., concur.

HILL, J. (concurring in the result)—I concur in the result. My reason is epitomized in the next to the last sentence of the majority opinion, "We are not disposed to interfere with the discretion the trial court exercised."

FINLEY, C. J., DONWORTH, and HAMILTON, JJ., concur with HILL, J.

OTT, J. (dissenting)—In *State v. Johnson, ante* p. 21, 371 P. (2d) 611 (1962), this court decided, as a matter of law, that the words "parole officer," used by a state's witness, did not deny the accused a fair trial.

In the instant case, the majority of this court conclude, as a matter of law, that the use of the same words, "parole officer," denied the defendants a fair trial. The only distinction between the two cases is that, in the *Johnson* case, the appeal was from the court's refusal to grant a new trial, while the instant appeal is from a judgment granting it.

The gravamen of the majority opinion is that, when the trial court exercises its judicial discretion in the granting of a new trial, this court will never substitute its judgment for that of the trial court, in the absence of a finding of abuse of discretion. The stated law, however, is not apropos when the trial court grants a new trial, based upon an erroneous application of the law. Such a review presents solely a question of law, and does not involve judicial discretion.

In *State v. Costello,* 59 Wn. (2d) 325, 367 P. (2d) 816 (1962), the jury returned a verdict finding the defendant guilty of negligent homicide. The trial court granted a motion in arrest of judgment or, in the alternative, a new trial. From the judgment entered accordingly, the state appealed. This court reversed the judgment, and ordered judgment and sentence entered upon the verdict of the jury for the reason that the trial court, in granting the new trial, had erroneously applied the law.

In the instant case, we are not concerned with the trial court's exercise of judicial discretion in granting a new trial, but, rather, with whether it properly applied the law. When the trial court has erred in applying the law, this court is required, in its review, to substitute its judgment for that of the trial court.

Did the trial court err when it held, as a matter of law, that the defendants were denied a fair trial?

In *State v. Johnson, supra,* we stated:

"The test is this: Did the inadvertent remark, which the jury was instructed to disregard, when viewed against the

backdrop of all the evidence, so taint the entire proceedings that the accused did not have a fair trial?"

The test involves consideration of four essential elements: (1) A questioned remark, which presupposes a technical error, (2) the court's duty to instruct the jury to disregard it, (3) the evidence of guilt, and (4) whether the questioned remark tainted the entire proceedings.

The trial court, in utter disregard of elements 2, 3, and 4, held that the technical error (element 1) alone denied the defendants a fair trial. Elements 2, 3, and 4 are essential to a judicial determination of whether the defendants were afforded a fair trial.

In regard to element 2, the trial court did not believe that the remark, at the time it was made, was prejudicial or that the so-called "atmosphere of the courtroom" was in any manner affected by it. The trial court nevertheless offered to instruct the jury to disregard the remark. The necessity for an instruction was waived when the defendants specifically requested that it not be given. *State v. Cunningham*, 51 Wn. (2d) 502, 319 P. (2d) 847 (1958).

The third element involves consideration by the court of the backdrop of the evidence and the trial, including waiver of the alleged error by subsequent conduct of the defendants. In the instant case, both defendants voluntarily offered themselves as witnesses, and, in so doing, their previous felony convictions became admissible in evidence. When the defendants became witnesses in their own behalf, the previous inadvertent remark relative to Taylor's parole officer lost its prejudicial effect, if any, in the light of the admitted felony convictions. In this connection, the court instructed the jury as follows:

Instruction No. 12: "The law makes the defendant a competent witness in his own behalf and you have no right to disregard the testimony of the defendant upon the ground alone that he is the defendant and stands charged with the commission of a crime. The defendant is a competent witness and has the right to testify in his own behalf, and when he does so testify he becomes the same as any other witness and his testimony is to be tested by

and subjected to the same tests, and only the same tests, as are applied to other witnesses."

Instruction No. 13: "Under the law of this state, the fact that a defendant has previously been convicted of a crime is not of itself any evidence of his guilt in this case. It is, however, a circumstance which may be weighed and considered by you in the determination of what weight or credibility should be allowed his testimony as a witness in this case."

Instruction No. 15: "In this case, you must decide separately the question of the innocence or guilt of each of the two defendants as to each of the two counts charged in the Amended Information. If you cannot agree upon the innocence or guilt of both the defendants as to any one count, but agree as to the innocence or guilt of one of them as to that count, you must render a verdict as to the one upon whose innocence or guilt you do agree."

The instructions limited the consideration which the jury should give to evidence tending to establish previous conviction of crime.

In granting a new trial, the trial court gave no consideration to the backdrop of the evidence which established that, while Taylor and Gilcrease were serving a jail sentence for another offense, they were separately interrogated by police officers concerning the two drive-in theater burglaries. Each separately signed a written confession detailing the precise time when and manner in which the burglaries were accomplished, the tools they used, the items of property taken, and where the stolen items could be found. The officers thereafter went to the designated place and recovered the remaining stolen items.

Taylor admitted that he signed the confession, but said that the statements therein contained were false and that he signed because he was promised leniency. Gilcrease offered no explanation for signing his confession, but corroborated Taylor relative to the alibi.

The evidence which established the backdrop of guilt, and which was as conclusive as though the defendants had been caught actually burglarizing the theaters, was given no consideration whatsoever by the trial court in granting a new trial.

As to the fourth element, did the mention of a parole officer "so taint the entire proceedings" that it can be said, as a matter of law, that the defendants were denied a fair trial?

The confessions of guilt and the recovery of the stolen items, some of them on the person of one of the defendants, together with their voluntary admissions of previous felony convictions, so discredited their alibi that the remark that one of them was a subject of parole neither added to nor detracted from their guilt.

In my opinion, the trial court erred in disregarding elements 2, 3, and 4 of the test, setting aside the verdict of the jury, and granting each of the defendants a new trial.

The majority opinion likewise disregards the third element of the test because "no question arises as to the sufficiency of the proofs to sustain the verdict of guilty, [and] it is unnecessary to narrate the evidence." To disregard the backdrop of all the evidence and ignore the waiver, during the trial, of the alleged technical error, emasculates the rule by eliminating the third element.

The majority refer to the questioned remark as an "evidential harpoon." In my opinion, the "evidential harpoon" that convicted the defendants was not the inadvertent remark of a witness, but the overwhelming backdrop of guilt which I have portrayed above in detail, and which the majority refuse to consider.

The majority say that "The injection of the existence of Taylor's parole officer was deliberate" on the part of the witness. This finding of fact by the majority, in an appellate review, is totally unsupported by the record. There is an affirmative finding by the trial court that the statement of the witness was unresponsive.

Finally, the majority assert that, because of the remark regarding "parole officer," the defendant Taylor was required to take the stand. The same contention for a similar remark was raised and rejected in *State v. Duree*, 52 Wn. (2d) 324, 324 P. (2d) 1074 (1958). In that case, we said [p. 327]:

" . . . we cannot reasonably conclude that the appellant took the witness stand merely because of the witness' reference to a 'mugg shot' picture when, in doing so, he knew he would be compelled to reveal his previous criminal convictions. We are convinced that, when the appellant took the stand, he did so for the purpose of denying his guilt and not because of the inadvertent statement of the police officer. Under the circumstances of this case, the reference to the picture did not constitute reversible error."

In the instant case, both of the defendants took the stand for the sole purpose of giving some explanation for their detailed confessions and to corroborate each other relative to their alleged alibi. Having taken the stand as witnesses, the prejudicial error, if any, was waived by their voluntary admission of their previous felony convictions.

Applying all of the elements of the test announced in the *Johnson* case, *supra*, to the trial of the defendants in the instant proceeding, they were, in my opinion, afforded a fair trial.

The judgment granting the defendants a new trial should be reversed, and the cause remanded with instructions to enter judgments and sentences upon the verdict of the jury.