

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67858-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ROYANNE WESTBROOK, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 11, 2013 |

SCHINDLER, J. — A jury convicted Royanne Westbrook of theft in the second degree. Westbrook seeks reversal on the grounds that the court abused its discretion in denying her motion for a mistrial. Because the trial court did not abuse its discretion, we affirm.

## FACTS

On September 26, 2010, Loretta LeFavor went to lunch with some friends at El Camino restaurant in Fremont. LeFavor left her four-year-old Staffordshire Bull Terrier Babu tied to a bike rack outside the restaurant. LeFavor could not see the dog from where she was sitting but said that she went to check on the dog approximately every ten minutes.

Pamela Panela works at a clothing store next door to El Camino. Panela saw a group of people gathered around the dog. Panela went outside to pet the dog. A

woman, later identified as Westbrook, walked up and told Panela that she was the dog's owner, and asked Panela to watch the dog for 10 to 15 minutes. Panela went back inside the store but continued to watch the dog. Panela saw Westbrook return, untie the dog, and walk away. When LeFavor discovered the dog was gone, she unsuccessfully searched for the dog.

Later that afternoon, LeFavor's friend Lisa Podmajerski was shopping at the Goodwill near Shoreline with her son and her boyfriend. Podmajerski and her son saw Westbrook and the dog in the parking lot, and walked over to pet the dog. Podmajerski said Westbrook was calling the dog "Bosco" but the dog was not responding. Podmajerski saw that the dog collar identified the dog's name as "Babu." After seeing the dog collar, Podmajerski recognized the dog as belonging to LeFavor.

Westbrook told Podmajerski that she took the dog because she thought the dog was abandoned. Westbrook told Podmajerski she did not want to give Podmajerski the dog because she wanted a reward if one was offered. While Podmajerski's boyfriend was on the phone with the police, Westbrook handed the dog to Podmajerski and drove away in a blue van. Podmajerski's boyfriend gave police the license plate number of the blue van over the phone.

Using the license plate number, the police located Westbrook's name and found a photograph of her. The police showed Panela and Podmajerski a photo montage of six women including Westbrook. Panela and Podmajerski each identified Westbrook as the person they had seen with the dog.

The State charged Westbrook with theft in the second degree. Before trial, the prosecutor stated that unless Westbrook testified at trial, the State did not intend to present any ER 404(b) evidence or prior convictions.

Panela, Podmajerski, LeFavor, and Seattle Police Detective Eric Nelson testified during the two-day jury trial.[1] Westbrook did not testify. The defense claimed that Westbrook took the dog to care for it because it had been abandoned.

Detective Nelson testified that he conducted a follow-up investigation after receiving a report from Detective Misho. The report described Westbrook, the blue van, and the license plate number. Detective Nelson testified that he ran the license plate number through the Department of Licensing (DOL) database and learned the vehicle was registered to a man and a woman with the last name Hartzog. Detective Nelson said that he ran the name Royanne Hartzog through the King County jail booking system and located a person named Royanne Westbrook and a booking photo that "resembled" the description of the woman in the report.

> A.    . . . I ran that name [Royanne Hartzog] through the King County jail booking system and obtained a photograph, a booking photo and it resembled the description that was provided in the report and it also listed a true name of Westbrook.
> Q.    So just to clarify, the database indicated a last name of Hartzog?
> A.    The D.O.L, Department of Licensing for the license plate, was Hartzog.
> Q.    And then you compared that to another database that you have available to you?
> A.    Through the King County jail booking system, I ran the name Hartzog and it came back as a true name of Westbrook.

During his testimony about preparing the photo montage, Detective Nelson also said that the photos typically used in the montage are "booking or DOL photographs."

---

[1] The jury also heard testimony from dog breeder Jenny Merritt whom the State called to establish the price of a Staffordshire Bull Terrier.

3

Outside the presence of the jury, the court expressed concern that Detective Nelson's testimony referred "to the fact that [Westbrook] might have been in jail." The prosecutor agreed to make no further reference to the photo montage. The defense moved for a mistrial on the ground that "there ha[ve] been references to Ms. Hartzog or Westbrook being in jail." The court reserved ruling on the motion for a mistrial until the conclusion of the testimony.

The court initially granted the defense motion for a mistrial. However, on reconsideration, the court denied the motion and decided to give the jury a curative instruction. The court ruled that "[u]pon further reflection, . . . the jury could very likely associate the fact that Ms. Westbrook was in jail to something that happened as a result of this case and this investigation." The written curative instruction the court gave the jury states: "Any evidence that the defendant may have been arrested shall not be considered by you for any purpose."

The jury found Westbrook guilty of theft in the second degree. The court sentenced Westbrook to a drug offender sentencing alternative.

ANALYSIS

Westbrook argues the trial court abused its discretion by denying her motion for a mistrial. "The trial court has wide discretion to cure trial irregularities, . . . and the standard of review is an abuse of discretion." State v. Post, 118 Wn.2d 596, 620, 826 P.2d 172 (1992). A reviewing court finds an abuse of discretion when no reasonable judge could have reached the same conclusion. State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). The trial court is in a better position to make this determination. State v. Perez-Valdez, 172 Wn.2d 808, 819, 265 P.3d 853 (2011).

4

To determine whether a trial court abused its discretion in denying the motion for a mistrial, we examine (1) the seriousness of the irregularity, (2) whether the statement was cumulative of other properly-admitted evidence, and (3) whether the irregularity could be cured by an instruction. Perez-Valdez, 172 Wn.2d at 818.

Westbrook argues the reference to the booking photo was serious and could not have been cured by an instruction to the jury. The State argues that the court did not abuse its discretion because the jury could have inferred that the booking photo was for the crime charged. The State also argues that the error was not serious because Detective Nelson did not refer to any crime that Westbrook had been convicted of or booked for, and the instruction cured any prejudice.

Because the record supports the trial court's determination that the jury likely inferred that Westbrook was arrested for the crime charged, we agree that the error was not so serious that it could not be cured with an instruction to the jury. The testimony showed that the detective who did the initial investigation prepared a report containing the license plate number, a description of the van, and a description of the suspect. Before any reference to the booking photo, Detective Nelson testified that he was conducting a follow-up investigation based on the initial report prepared by Detective Misho. The court also instructed the jury not to consider the fact that the defendant had been arrested for any purpose. A trial court has wide discretion to cure trial irregularities. Post, 118 Wn.2d at 620. A jury is presumed to follow instructions of the court. State v. Montgomery, 163 Wn.2d 577, 596, 183 P.3d 267 (2008).

The cases Westbrook relies on are distinguishable. In State v. Escalona, 49 Wn. App. 251, 742 P.2d 190 (1987), the State charged the defendant with second degree

5

assault with a knife. Escalona, 49 Wn. App. at 252. At trial, the victim testified that on the day of the assault, he was nervous because the defendant had a record and had previously stabbed someone. Escalona, 49 Wn. App. at 252-53. Because of the seriousness of the error, the logical relevance of the testimony, and the weakness of the State's case, we held that no instruction could cure the prejudice. Escalona, 49 Wn. App. at 255-57.

State v. Taylor, 60 Wn.2d 32, 371 P.2d 617 (1962), is likewise distinguishable. In Taylor, the court affirmed the grant of a new trial where a police officer deliberately and repeatedly referred to the fact that the defendant had a parole officer. Taylor, 60 Wn.2d at 33, 42. Defense counsel objected to the testimony during the trial and argued that the reference to a parole officer indicated the defendant had been convicted of a crime. Taylor, 60 Wn.2d at 33. The trial court granted a mistrial, concluding a curative instruction would only further highlight the testimony. Taylor, 60 Wn.2d at 37. In upholding the trial court's decision, the court repeatedly noted that the trial court was in a better position to observe "the very atmosphere of the courtroom," Taylor, 60 Wn.2d at 40, and noted the trial court's "peculiar advantage in observing the effect on the jury of prejudicial evidence." Taylor, 60 Wn.2d at 41.

Here, unlike in Escalona, Detective Nelson's testimony did not refer to a prior incident or previous conviction. See State v. Condon, 72 Wn. App. 638, 649-50, 865 P.2d 521 (1993) (testimony that defendant had been in jail less serious because it did not indicate defendant had been convicted). And, unlike in Taylor, the trial court concluded a curative instruction was appropriate.

Because the trial court did not abuse its discretion by denying Westbrook's motion for a mistrial, we affirm.

WE CONCUR: